Cole, Ch. J.
I.- The policy was issued “upon the faith of the statements in the application,” with a stipu *116 lation that if they “ shall be found in any respect untrue” the policy shall be void. The main contest was upon the truth or falsity of the answers to the following, questions contained in the application signed by the plaintiff and his wife, upon which the policy was issued : -9. Has father, mother, brother or sister of the party died or been afflicted with consumption or any other disease of the lungs, or insanity? If so, state full particulars of each case. No! How many brothers and sisters in all? One brother. How many have died and of what disease ? One sister died in infancy. What is the present health of the survivors ? Good. 10. Has the party been or is she now afflicted with fits, dropsy, liver complaint, asthma, spitting of blood, gout, rheumatism, insanity, rupture or fistula, and which ? No. 11. Has the party been afflicted with disease of the heart, of the urinary and, if a female, of the uterine organs; if so, which? No. 12. Has the party been afflicted during the last seven years with any severe or acute constitutional disease and what? No. 13.' Is the party now afflicted with any disease or disorder, and what? No. 14. Has the party ever met with any accidental or serious personal injury; if so, what was it? No. The evidence was conflicting as to whether these answers were true or false.
The defendant asked eleven instructions, in substance applying the same to each answer as above set out, that the answers to the questions constitute a wa/rranty, and if they were untrue, whether intentionally so or not, they must find for defendant. These were refused; and the court gave several instructions, substantially that “ it was the duty of plaintiff and wife to answer each and every question truthfully, and if they did not do so on every material matter or question, then plaintiff cannot recover;” and again, “ the answers to each and every question in the application must be substantially true, and any misstatement of facts in the application upon amy material matter *117 vnqwvred of., whether intentional or not, would avoid the policy,” etc. If the cause had been submitted to the jury for a general verdict upon these instructions, without more, and they had found for plaintiff, it would be our clear duty to reverse. Under the terms of the policy in this case, the answers to the questions contained in the application became warranties, not that they were substcmtialby true as to the material matters, but that they were true in every particular, although, in the opinion of the jury, such particular, wherein they were untrue, may not have been material to the risk.' See Angelí 'on Fire and Life Insurance, § 140, et seq., and § 307, et seq.; Everett v. Desborough, 5 Bing. 503; 3 Kent’s Com. 288; Miles et al. v. Conn. Mut. Life Ins. Co., 3 Gray, 580; Stout v. The Fire Ins. Co. of New Haven, 12 Iowa, 383; and cases cited by appellant’s counsel. But the* jury were not required by the court or parties to return a general verdict. They were required by the court at the request of the defendant to find specially as to the first five, and by the court, on its own motion as to the last three specific facts. Their finding was as follows:
1st. Did Sarah, the mother of Malinda Jane "Wilkinson, die with consumption, or was she aifiicted with consumption or any other disease of the lungs ? Answer. No.
2d. Was Malinda Jane Wilkinson, at the "date of the application (September 14th, 1866), afflicted with any disease or disorder ? Ans. No.
3d. Did Malinda Jane Wilkinson, prior to September. 14th, 1866, meet with cmy accidental personal injury? Ans. Yes.
4th. Did Malinda Jane Wilkinson, prior to September 14th, 1866, meet with any serious personal injury? Ans. No.
5th. Did Malinda Jane Wilkinson, on or about the year 1862, fall at a considerable height from a tree, and was she sick for a time in consequence ? Ans. Yes.
*118 6th.. If the jury find that Malinda Jane Wilkinson did at any time meet with an accidental personal injury by falling from a tree or otherwise, as inquired of in questions Nos. 3, 4 and 5, they will then answer further the following questions:
Was that injury only temporary, and did it pass oft soon? Ans. Yes.
7th. Was said injury (if any) to such an extent as to exert or cause any permanent disease or influence upon the subsequent health of the said Malinda Jane Wilkinson? Ans. No.
8th. Was the injury the said Malinda Jane Wilkinson received from the fall from the tree (if she did so fall), simply temporary, and did it pass off entirely in a few days, without in any manner injuring her subsequent health or longevity? Ans. Yes. This was all and the only ver diet-re turned by the jury.
The defendant moved for judgment in its favor on the answers returned by the jury, claiming it upon the answers 3 and 5, and insisting that the answers 6, 7 and 8 were immaterial, and that the questions requiring them were improperly submitted. This motion was overruled, and judgment was rendered for plaintiff. It will be observed that the jury found specific and independent facts, having no connection or relation whatever to any proposition of law, and hence no prejudice could have resulted to defendant by reason of the refusal to give proper, or the giving of improper, general instructions to the jury, as before referred to. The single question presented is, whether the answers to the last three questions so neutralize and override the answers 3 and 5 as to entitle the plaintiff to a judgment ? Without such last three answers, it is reasonably clear that the defendant would be entitled to judgment upon answers 3 and 5. In other words, the real question is upon the construction of question 14 in the application, to wit: Has the party ever met with any *119 accidental or serious personal injury, and if so, what was it %
The defendant claims that if the insured “ever met with cm/y aociciental * * imgwry” that will bar a recovery, because the application is a warranty that she never did. In this construction we do not concur. The language' of the question is to have a reasonable construction, in view of the purposes for which the question. was ashed. It must have reference to such an accidental injury as probably would or might possibly have influenced the subsequent health or longevity of the insured. It could not refer, and could not be understood by any person reading the question for a personal answer to refer, to a simple burn upon the hand or arm, in infancy; to a cut .upon the thumb or finger, in youth; to a stumble and falling, or the sprain of a joint, in a more advanced age. The idea is, that such a construction is to be put by the courts upon the language as an ordinary person of common understanding would put upon it when addressed to him for answer. The strict construction or hypereriticism of the language, which would make the word “ any ” an indefinite term, so as to include all injuries, even the most trifling, would bring a just reproach upon the courts, the law, the defendant itself and its business. The language of the question must have a fair construction, and, in the words of our statute (Rev. § 3994), “ that sense is to prevail against either party in which he had reason to suppose the other understood it.”
This construction is not only in accord with reason and justice, but it has the support of the authorities in like cases. Thus, in Chattuch v. Shaw, 1 Moody & Rob. 498, where the insured declared that “ he had not been afilicted with nor subject to fits,” Lord Abingeb, C. B., held this to mean, not that he never accidentally had had a fit, but that he was not a person habitually or constitutionally afflicted with fits; a person liable to fits from some peculiarity of temperament, either natural or contracted from
*120 some cause during life. And the policy was held not to be vitiated by the circumstance that, in consequence of a fall, the person whose life was insured had, several years before the date of the policy, two epileptic fits within a short interval, which the jury were satisfied had never recurred. So, in the case of Ross v. Bradshaw, 1 Wm. Black. 312, the warranty was that the party is in good health. The fact that, twelve years before, the party had received a wound which produced partial paralysis of the organs of retention of the urine and fosees, but not such an injury as was calculated to shorten life or affect the vital functions, was held not to invalidate the policy; and Lord Mansfield told thp jury that all that was necessary was proof that the life was in fact a good one, and so it might be though he had a particular infirmity; and the only question was, whether he was in a reasonably good state of health, and such a life as ought to be insured on common terms. See, also, Watson v. Mainwarring, 4 Taunt. 763; Angelí on Fire and Life Ins., § 310, et seq. In this case the defendant having admitted the policy, death and proof of loss, it was not error to render judgment for plaintiff on the special verdict.
II. Several questions were made on the trial as to the admission of testimony, which we need only briefly notice. One Hill, a non-professional witness, testified that he had seen persons affected with consumption; he was then asked, “ to what extent has been your observation ? ” This question was objected to, and the objection sustained. "While it is probable the objection was premature, yet it is clear that no prejudice resulted to defendant, since the witness could not have given any material testimony as a medical man or expert, it being apparent from his evidence that he was neither. The question put to the witness, Sandusky, as to what disease he always understood Malinda’s mother died with, was clearly incompetent and rightly excluded. The deposition of Dr. J. E. Sanford had been taken by the *121 plaintiff. The witness testified that he was a physician and surgeon, and had been engaged in the practice for nearly twenty years. The defendant objected to the sixth and eighth interrogatories, and answers in chief, and to the ninth cross interrogatory and answer. They are as follows :
Sixth mterrogatory. State all you may know in regard to the last illness of said wife of plaintiff; what was her disease and your opportunity of knowing? Answer. My information respecting this case was derived from a careful examination which I made of it at the time, and from the history I received of it from the attending physician. Mrs. Wilkinson was laboring, at the time I saw her, under a disease of the lungs.
Eighth mterrogatory. What examination, if any, did you make of said wife of plaintiff ? and state her condition, the nature of her disease and the causes of the same, as far as you can tell, and state particularly. Answer. I examined the case by physical explorations and by inquiring into its history. I made up my opinion upon this ground, and from the commemorative circumstances which I was able to subject to my own observation. My examination of the case was made with special reference (as is usual) to the question of its hereditary or non-hereditary character, and I could not find such evidence of tubercular formations, and the incident conditions, as justified the conclusion that this ease was one of hereditary consumption of the lungs. The case, as it presented itself to my mind, was one of pneumonia or pleuro-pneumonia, and seemed to have its rise, progress and decline within a few weeks prior to the date of my visit. I saw nothing in the case of Mrs. Wilkinson, as far as her lungs were concerned, incompatible with her good health a few weeks before that time.. Diseases of this character are usually caused by exposure to atmospheric vicissitudes, or from getting wet, inadequate clothing, etc.
*122 Nmth er.oss-mterrrogatory. Were you informed, by Mrs. Wilkinson, or did you know, that she had been in very feeble health for some years prior to her death ? Answer. The previous condition of a patient’s health is always an important question in the examination and treatment of a special case of disease, and it was considered and inquired into in this case; but I was not informed that her health had been particularly bad or poor prior to the attack of disease from which she was then suffering.
A careful examination of these answers will show them entirely free from the objections made to them that they are not responsive and are hearsay, as well as from any other valid objection. They are directly responsive, and there is not a word of hearsay testimony in any one of them. It is true, Dr. Sanford says in his ninth answer, that he derived his information respecting the case from a careful examination, and from the history received from the attending physician. But he does not state that history, while he does state affirmatively, and as upon his own knowledge, the disease under which the patient was laboring. In the eighth answer, he says he inquired into the history of the disease, but does not give it, or show but that its history was given him by the patient herself; while.in the ninth, he denies having received the information inquired after. There was certainly no error in overruling the objections to these questions and answers.
As there was no error to the prejudice of the defendant and appellant, the judgment must be
Affirmed.