FRANCE E. PETERSON v. DES MOINES LIFE ASSOCIATION, Appellant.

**Life Insurance:** CONTRACT TO MAKE REPRESENTATIONS MATERIAL: *Forfeiture.* Where there is no statutory regulation, the parties to a contract of life insurance can make the truth of statements in the application material to the risk and provide that the fal-sity of the statements therein made shall render the policy void, and this is so though the statements do not affect the risk and are not fraudulently made.

WHO IS MEDICAL EXAMINER. The medical examiner contemplated by Code, section 1812, providing that where a life insurance company's examiner or physician, acting under the rules of the company, reports the applicant to be a fit subject for insurance, the company shall be estopped from setting up that the insured was not in the condition of health required by the policy at

the time of issuance thereof in an action on such policy, unless the same was procured through fraud of the assured is the person who makes the actual examination and report.

FRAUD. Fraud in procuring the certificate or report of the medical examiner, and not fraud in procuring the policy, is the fraud that may be shown to defeat the policy.

*Estoppel by report of.* The estoppel in such statute not only applies to the assured's condition of health at the time the policy is issued but relates to all matters inquired about so far as they bear on the health and physical condition of the applicant as affecting the risk.

*Construction of representations.* An inquiry of an applicant for life insurance whether she had ever had any spitting or coughing of blood is limited to such spitting or coughing of blood as a reasonable person might suppose to indicate some ill health or physical condition affecting the applicant's desirability as a risk.

*Burden of proof.* In an action on a life insurance policy, wherein the company alleges that the assured had made untrue answers to questions asked at the time of her application, it was for the jury to say, not only whether such answers were untrue, but also, whether if untrue, they were fraudulent.

*Appeal from Madison District Court.*—HON. J. H. APPLE-
GATE, Judge.

WEDNESDAY, OCTOBER 2, 1901.

ACTION on a policy of insurance for $5,000, issued in January 1898, by defendant on the life of Hannah S. Peterson, and payable to plaintiff. Insured died in August, 1898. Defendant alleges false statements made by assured in the application as constituting fraud and breaches of warranty. Verdict and judgment for plaintiff. Defendant appeals.—
*Affirmed.*

*George R. Sanderson, Steele & Robbins* and *Dabney &
·Cooper* for appellant.

*Guiher & Tidrick* for appellee.

McCLAIN, J.—The policy in question was issued in pursuance of (1) an application, signed by assured, for mem-

bership in the defendant association; (2) an application, also signed by assured, containing questions answered by the applicant to one Dr. Ayers, who acted as medical examiner for defendant, and who wrote the answers of assured therein, and witnessed her signature thereto; and (3) a special report of said Ayers as medical examiner, in which, in response to questions, he made answers as to the physical condition of the applicant, based upon his examination, oral and physical, reported her to be a good risk, and recommended her acceptance as a subject of insurance. In the application for membership was a stipulation on the part of the assured that all statements and answers written therein and those made to the medical examiner in the second application above referred to were warranted to be true, and to be full and fair answers to the questions. There can be no doubt that, aside from any statutory restriction, the parties to a contract of life insurance can thus make the truth of statements in the application material to the risk, and that the falsity of statements thus made will constitute breach of warranty, and render the policy void, regardless of whether the matters falsely stated affected or might have affected the risk, and regardless of whether the false statements were fraudulently made. *Wilkinson v. Insurance Co.*, 30 Iowa, 119; *Miller v. Insurance Co.*, 31 Iowa, 216; *Nelson v. Insurance Co.*, 110 Iowa, 610. But by Code, section 1812, it is provided that, where the company's medical examiner or physician acting as such under the rules and regulations of the company, reports the applicant to be a fit subject for insurance, the company "shall be thereby estopped from setting up in defense of the action on said policy * * * that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured through the fraud or deceit of the assured." It is evident that the medical examiner or physician contemplated

in this section is the person who examines the applicant, and determines his condition of health and reports whether he is a proper risk.    This was done in the present case by Dr. Ayers.    It is no doubt customary for life insurance companies to have a general medical adviser or director at the home office whose advice is taken into account in determining whether the risk shall be accepted; but the person who makes the actual examination, and reports on the applicant's condition, is evidently contemplated by the statute as the medical examiner or physician referred to.    In the construction of this statute this court has held that it is fraud in procuring the certificate or report of this medical examiner, and not fraud in procuring the policy, which the statute above referred to permits to be shown for the purpose of defeating the policy, notwithstanding the estoppel therein provided for. *Weimer v. Association,* 108 Iowa, 451; *Stewart v. Association,* 110 Iowa, 610; *Nelson v. Insurance Co.,* 110 Iowa, 528.    It is to be noticed that the estoppel declared by the statute is as to the condition of the health of the assured at the time the policy was issued.    There may, no doubt, be warranties as to other matters not relating to the health of the assured,— such as his place of residence or occupation,—breach of which will avoid the policy notwithstanding the statute; but, so far as the statements relied on as warranties relate to the health of the assured and his acceptability as a risk on that account, the company is estopped from showing their falsity, unless they constitute fraud or deceit in procuring the report or certificate of the medical examiner.   *Nelson v. Insurance Co., supra.*    Appellant's counsel contend, however, that the estoppel applies only to the condition of health of the assured at the time the policy is issued, and that statements as to previous disease, treatment by physician, accidents, etc., are warranties any, breach of which will avoid the policy.    But we cannot agree to this construction.    The ultimate object of the inquiries in re-

sponse to which these statements are made is to ascertain.
whether the applicant is a suitable risk, and that depends.
upon age, occupation, health, etc. Statements as to prev-
ious sickness, treatment, accident, etc., bear only upon the
health and physical condition at the time the company is.
asked to accept the risk, and it is the evident purpose of the
statute to limit inquiry with reference to the truth of these
statements to the question whether assured, by fraudulent
representations or concealments, induces the medical exam-
iner to recommend the risk so far as health and physical
condition are concerned, when, if the assured had acted in
good faith, such a recommendation would not have been:
made. In short, we think that the estoppel relates to all.
matters inquired about so far as they bear on the health and
physical condition of the applicant as affecting the risk,
whether they refer to the time the policy is issued or to some
previous time; for the ultimate question is whether the ap-
plicant is a suitable person to accept as the subject of life in-
surance.

It may be that the statute, as thus construed, precludes.
the companies from relying upon breaches of warranty as to
matters which they have previously been in the habit of mak-
ing conditions as to the validity of the contract. This has also
been done as to contracts of fire insurance. See Code, sec-
tion 1743. But the legislature unquestionably has the right
to prescribe the conditions on which a contract of insurance
may be made, and the policy of thus shutting off controversy
as to matters which relate only remotely and collaterally to
the contract is equally unquestionable. Indeed, the ten-
dency of the courts, without the aid of legislation, has been
to construe statements as to previous accidents and diseases.
into mere assertions on the part of the applicant as to what
he knows of his personal knowledge, or may be presumed in
good faith to know, instead of strict warranties regardless of
personal knowledge. *Wilkinson v. Insurance Co.*, 30 Iowa,
119. It is well settled that such warranties are to be con-

strued with reference to the general object of the inquiry. *Bancroft v. Association,* 120 N. Y. 14 (23 N. E. Rep. 997, 8 L. R. A. 68) ; *Union Ins. Co. v. Wilkinson,* 13 Wall. 222, (20 L. Ed. 617) ; *Home Mut. Life Assn. v. Gillespie,* 110 Pa. St. 84 (1 Atl. Rep. 340) ; *Moulor v. Insurance Co.,* 111 U. S. 335, (4 Sup. Ct. Rep. 466, 28 L. Ed. 447) ; *Connecticut Mut. Life Ins. Co. v. Union Trust Co.,* 112 U. S. 250, (5 Sup. Ct. Rep. 119, 28 L. Ed. 708) ; *Alabama Gold Life Insurance Co. v. Johnson,* 80 Ala. 467 (2 South. Rep. 125, 59 Am. Rep. 816).   In this case the lower court instructed the jury in accordance with the views above expressed, and stated that assured was required to give full and true answers, within her personal knowledge, to questions propounded to her in her medical examination which called for information within her knowledge of past facts concerning ailments or diseases which she had had, or which affected her health in the past or her condition of health at the time of the examination; and that, if she failed to give such full information, or if she gave untrue answers to such questions, then such false statements would authorize a finding that the policy was procured through fraud or deceit of the assured, and the verdict should be for the defendant.   Appellant now contends that the evidence showed without conflict that in several respects the answers of assured were false, within her knowledge, and that the jury should not have found for the plaintiff on the evidence.   Assured was asked in her medical examination whether she had ever had any "Spitting or coughing of blood," and answered "No."   There is evidence that on various occasions prior to the giving of this answer assured did spit blood, and the jury so found in response to a special interrogatory.   But the court, in its instructions, limited the inquiry to the queston whether assured was *subject to* spitting or coughing of blood, and we think this was proper.   The inquiry must be given a reasonable construction, and such construction would limit it to such spitting or coughing of

blood as a reasonable person might suppose to indicate some ill health or physical condition affecting the desirability of applicant as a risk. It would surely not be expected that applicant should answer as to spitting of blood by reason of the extraction of a tooth or accidental biting of the tongue. The finding of the jury that the assured had spit blood was, therefore, not conclusive. The jurors may be found, under the evidence, that she had not spit blood in such a sense as to show that her answer was fraudulent. The same reasoning disposes of the complaint of appellant as to other answers of assured with reference to previous ill health and accidents. It was for the jury to say, not only whether such answers were untrue, but also whether, if untrue, they were fraudulent; we cannot say, under the record, that the fraud of assured was so conclusively established as to require us to declare that the verdict is without support, or is the result of passion or prejudice. · Appellant relies on evidence tending to show that answers of assured that she had never made any application for insurance on which a policy had not been issued, and as to the names of physicians who had attended upon or been consulted by her, were untrue. But as to these matters the facts were at least to some extent, known to the agent taking the application in the one case and to the medical examiner in the other, and it was for the jury to say whether, in view of the information which assured knew these representatives of the company possessed, her answers given under their sanction were fraudulent.—AFFIRMED.