D. L. STEWART and MRS. C. GODWIN v. EQUITABLE MUTUAL LIFE ASSOCIATION of Waterloo, Iowa, Appellant.

**Insurance:** FALSE STATEMENT IN APPLICATION: *Construction.* In an insurance application the insured was asked, "How long since you have consulted a physician?" and he answered, "Five years." It was shown that insured had consulted physicians the year previous. *Held,* insufficient to establish falsity in insured's answer, as the question was ambiguous and could be construed to mean either how long "since he last" or how long "since he first" con-

sulted a physician, and it did not appear which construction he had given it.

Estoppel to assert falsity.　Where the medical examiner of an insurance company declared insured a "fit subject for insurance" the insurance estopped was estopped from afterward setting up that the insured was not in the condition of health required by the policy at the time of its delivery, since, unless the policy was procured by fraud or deceit, or unless the medical examiner was deceived by assured's answers in his application, the company could not question their truthfulness.

Evidence: extracts from medical works.　It was error to admit in evidence, over objection, extended extracts from medical works defining and giving the probable cause, progress, and symptoms of a disease, since such works are not presumptive evidence of facts of general notoriety.

Appeal: motion for new trial: *When error need not be pointed out in*.　Errors assigned in rulings on the admission of evidence, to which the court's attention was directed and exceptions saved, may be reviewed on appeal, though they were not urged or mentioned in a motion for new trial which dealt with independent questions.

*Appeal from Blackhawk District Court.*—Hon. A. S. Blair, Judge.

Monday, February 5, 1900.

Action on life insurance policy.　Defense, that it was procured by fraud, and was void because of false answers to certain questions warranted to be true.　The defendant appeals from judgment on verdict for the plaintiff.— *Reversed.*

*Boies & Boies* for appellant.

*C. H. E. Boardman* and *Alford & Gates* for appellee.

Ladd, J.—The errors assigned in rulings on the admission of evidence were not mentioned in the motion for a new trial.　Nor was this essential in order to have them reviewed. See section 4106, Code.　Had a part of these been so pressed upon the attention of the trial court, it is possible this might be construed as waiving others.

But, where such motion deals with independent questions, such as errors of the jury in returning verdict, or of the court in giving or refusing instructions and in failing to direct verdict, as in this case, there is no ground for regarding exceptions to such rulings as abandoned. The purpose of a motion for a new trial is to bring before the court errors which, without it, would not be called to its attention. *Brown v. Rose*, 55 Iowa, 734; *Hooker v. Chittenden*, 106 Iowa, 323; section 4105, Code. See *Ankrum v. City of Marshalltown*, 105 Iowa, 493. Surely, filing a motion of this kind does not waive errors to which the court's attention has been previously directed and exceptions saved. Having been once pressed for correction, the duty of the litigant has been discharged, and he is under no obligation to demand reconsideration. This is the reason for the statute in authorizing review of such errors in the absence of any motion. True, some of those alleged in the motion might have been passed on without an application for new trial, but their mention there ought not to preclude the consideration of others having no connection with them.

II. Extended extracts from medical works defining and giving the probable cause, progress, and symptoms of diabetes were received in evidence over the objection of the defendant. These were from the Practice of Medicine, by Wood & Fitz, and the Science and Practice of Medicine, by Palmer. Under the ruling in the recent case of *Bixby v. Bridge Co.*, 105 Iowa, 293 (43 L. R. A. 533), this was error.

III. In the application the assured was asked and answered certain questions, which may be set out: "Q. How long since you have consulted a physician? A. Five years. Q. For what disease? A. Cold. Q. Name and postoffice address of physician consulted. A. Dr. Imrie, Detroit, Mich." By its terms this application became a part of the contract of insurance, which was to be null and void if any of the answers were untrue. Clearly,

this amounted to a warranty, and it is not material that some of the answers may be unimportant. The parties, having agreed to their materiality, set that inquiry at rest. *Cobb v. Association,* 153 Mass. 176 (26 N. E. Rep. 231, 10 L. R. A. 666); *Insurance Co. v. McTague,* 49 N. J. Law, 587 (9 Atl. Rep. 766); *Insurance Co. v. France,* 91 U. S. 510 (23 L. Ed. 401); *Powers v. Association,* 50 Vt. 630; *Cushman v. Insurance Co.,* 63 N. Y. 404. See *Hygum v. Insurance Co.,* 11 Iowa, 21; *Stout v. Insurance Co.,* 12 Iowa, 385; *Miller v. Insurance Co.,* 31 Iowa, 227. The evidence showed that the deceased had consulted physicians during the year previous, understood the malady (diabetes) under which he was suffering, and its probable result. Did this establish the falsity of his answer? That must depend on the character of the question, and on what would one in the situation of the deceased understand to be desired? The inquiry was not how long since he last or first consulted a physician, but simply how long since he did so. If he had been under a doctor's care some time, he would naturally infer that the information desired was when he was first so attended. Thus, one in the habit of using tobacco or intoxicating liquors, when asked how long since you smoked or drank, would inevitably give the date of beginning. The same would be true in answer concerning any practice or custom. On the other hand, one without such attendance for some time would infer the question to call for the last time a doctor had been consulted. In *Moore v. Insurance Co.,* 3 Ont. App. 230, it was held the assured, because of his situation, was authorized to construe a similar question to relate to the first time he was attended by a physician. These questions were prepared by the insurer, and must be construed liberally in favor of the policy holder. Because of the ambiguity, the information called for was uncertain, and whether the answer was false depends on the deceased's understanding of what was required. Ordinarily, the intention of the insured is not involved where answers are war-

ranted to be true. See cases cited above. But, where their truthfulness depends on the construction of a question subject to two different interpretations, then his intention becomes important, for his understanding of the inquiry determines the character of the answer. The material inquiry was whether the assured truthfully responded to the inquiry as he understood it.

IV. The medical examiner of the company had declared the insured "a fit subject for insurance," and, by the terms of the statute, it was "estopped from setting up in defense of an action on the policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by the fraud or deceit of the assured." This policy contains no express requirements with reference to the health of the assured, nor are these ordinarily found in such instruments. Very evidently the degree of health contemplated by the statute is that of being "a fit subject of insurance." But for being in that condition, no company would knowingly issue a policy. When the insured is in such a physical condition as to be "a fit subject for insurance" he is in a "condition of health required by the policy." The only possible purpose of the information sought was to enable the medical examiner to determine the true physical condition of the applicant. Had the insured consulted a physician, even though for a disease other than that from which death resulted, or from mere apprehension of having some ailment, the company, through its examiner, was directly interested in knowing the fact, that further inquiry might be made, and it be ascertained, if possible, whether the seeds of disease were lurking in the system, or the constitution, apparently sound, had in some way been undermined. The results of such an investigation would have no bearing save on the physical fitness of the applicant, and we are of the opinion that, in the absence of fraud or deceit practiced on the medical examiner of the insurer, the

company is estopped from questioning the truthfulness of such answers. *Weimer v. Association,* 108 Iowa, 451. Stewart also declared, in response to certain questions, that he was in usually good health, and that the more important organs of his body (enumerating them) were in a healthy state. The evidence tended to show that he then had diabetes, and knew it. But, unless the examiner was deceived by these answers, or in some other way, the defendant was not entitled to have his condition of health investigated. The cause was tried on the theory that "same," in the last clause of section 1812 of the Code, referred back to "policy," instead of "certificate of health," or its equivalent. We held otherwise in *Weimer v. Insurance Co., supra,* and think that the reasonable, and certainly the grammatical, construction of the statute. Other errors assigned will not be likely to occur at another trial.—REVERSED.

GRANGER, C. J., not sitting.