HATTIE D. WOOD, v. FARMER'S LIFE ASSOCIATION, Appellant.

Insurance: EXAMINER'S REPORT: FRAUD: ESTOPPEL: PLEADING.
1  Where the medical examiner of an insurance company reports
an applicant a fit subject for insurance, the company is
estopped from setting up in defense to a suit on the policy that
assured was not in the condition of health stated in the ap-
plication and medical examiner's report unless the company
allege and prove that the examiner's report was obtained by
the fraud and deceit of the assured, under Code, section 1812.

Construction of By-Laws: ASSESSMENTS: LIABILITY OF INSURER:
2  RIGHTS OF BENEFICIARY.  Where the by-laws of an assessment
company provide several sources from which death losses may
be paid and do not specifically require an assessment for each
loss, but state that a beneficiary shall be entitled to a sum
equal to that realized from an assessment from all members in
good standing at the death of insured, not exceeding the
amount named in the certificate, an assessment is not a con-
dition precedent to a determination of the company's liability;
and in the absence of a showing by the insurer of the amount
of such an assessment the beneficiary is entitled to a judgment
for the face of the certificate.

Denial of Continuance: ABSENCE OF WITNESS.  Overruling a mo-
3  tion for a continuance based on the absence of a witness whose
evidence would be inadmissible is not error.

Premature Action: PROOF OF DEATH: ADDITIONAL PROOF.  Where
4  an action on a policy of insurance is not brought for more than
ninety days after the original proofs of death are received by
the insurer, as required by its by-laws, the fact that the com-
pany requested additional proof on a specific matter not re-
quired by the by-laws, and which was furnished, did not
render the action premature although ninety days from the
date of the receipt of the additional proof had not elapsed.

*Appeal from Jones District Court.*—HON. H. M. REMLEY,
Judge.

MONDAY, JUNE 1, 1903.

ACTION on certificate of insurance in defendant asso-
ciation. At the conclusion of the evidence the court
directed a verdict for the plaintiff, and from judgment
thereon the defendant appeals.—*Affirmed.*

*Carr, Hewitt, Parker & Wright* for appellant.

*F. O. Ellison* and *F. L. Weaver* for appellee.

McCLAIN, J.—In one division of its answer defendant
alleged that the certificate was issued in consideration of
the statments contained in the application and medical
examinaton of the deceased, Francis M. Wood, in which
he stated and represented that he had never had any diz-
ziness, unconsciousness, etc., nor any shortness of breath,
disease or functional disorders of the heart, and that said
statements and representations were untrue, and known
to the said Francis M. Wood to be untrue, at the time they
were made; that in issuing the said certificate the defend-
ant relied upon such representations, and believed the
same to be true, and, so believing and relying, issued the
said certificate; that said Francis M. Wood died of heart
disease, from which he was suffering at the time of mak-
ing his application, and for a long time prior thereto; that
said disease was indicated by dizziness, unconscious spells,
and shortness of breath; that prior to making said appli-
cation he had been repeatedly attacked by dizziness and
shortness of breath, as he well knew, notwithstanding
which, and with the design and purpose of cheating and
defrauding the defendant association, he knowingly and
willfully stated in said application that he had at no time
suffered from either dizziness, unconsciousness, or short-
ness of breath, or any disease or functional disorders of
the heart; and that by reason of the premises the said
certificate was obtained by fraud and misrepresentation,
without any knowledge on the part of the defendant asso-

ciation, or any of its officers or agents, of the falsity of such statements.    It is further alleged that all applications for membership in the defendant association are passed upon by its medical director, who examined the application of Francis M. Wood, and because of the false and fraudulent statements therein contained approved of such application, and that if said questions had been truthfully answered the application would have been rejected by said medical director, and that the report of the medical director approving said application was obtained by the false and fraudulent statements aforesaid.    Defendant offered evidence tending to show the truth of these allega-, tions, but the court excluded such evidence, and, by directing a verdict for the plaintiff, ruled in effect that the facts alleged did not constitute a defense.

It appears that the medical examination of the applicant was made by one Dr. Gorman, acting as medical examiner for the defendant; that the report of his examina-

1. EXAMINERS report: fraud: estoppel: pleading.

tion of the application was considered by the medical director of the defendant, and that such director's recommendation to the defendant to issue the certificate was based in part on such report; but that, had the answers of the applicant shown the facts which the offered testimony tended to show to be true, as known to the applicant when the statements in his application were made, the application would not have been approved.    It is to be noticed that it is nowhere alleged, nor is there any evidence tending to show, that Dr. Gorman, the medical examiner, was deceived or misled by the alleged false statements of the applicant, or that any fraud was committed by the applicant in securing the report of such medical examiner.    So far as appears from the pleadings or the evidence, Dr. Gorman may have been fully and truthfully advised as to all the facts, and may have made his report in good faith, believing that the applicant was a proper subject for insurance.

We have then the simple question whether the provision of Code, section 1812, that "where the medical examiner or physcician acting as such" issues a certificate of health, or declares the applicant a fit subject for insurance, the company or association "shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured," applies to the certificate or declaration of the medical examiner, or to the approval of the application and examiner's report by the medical director. It has already been settled that it is the procuring of the certificate of the medical examiner by fraud, and not the procuring of the policy or certificate of insurance by fraud, which, under the statute, may be shown to defeat the policy. While some language was used by this court in the case of *Welch v. Union Central L. Ins. Co.*, 108 Iowa, 224, apparently inconsistent with this view, the true construction of the statutory language has since been settled by repeated adjudications. *Weimer v. Economic L. Ass'n*, 108 Iowa, 451; *Stewart v. Equitable Mutual L. Ass'n*, 110 Iowa, 528; *Nelson v. Nederland L. Ins. Co.*, 110 Iowa, 600; *Peterson v. Des Moines L. Ass'n*, 115 Iowa, 668; *Brown v. Modern Woodmen*, 115 Iowa, 450. Any other construction of the language of the statute would leave it without effect, for it would still be open to the company, as it was before the statute, to contend that the policy was fraudulently procured by reason of false statements in the application, and the truth of the statements would thereby practically be made matter of warranty, notwithstanding the medical examination in which the examiner had ascertained all the facts, and on which he had recommended the applicant as a fit subject for insurance. As said in *Weimer v. Economic L. Ass'n, supra.* "The very evident purpose of

the statute is to prevent the defeat of recovery on any policy where the company has by its skilled agent examined and passed upon the fitness of the applicant for insurance." To hold that the medical director who passes upon the report of the medical examiner is himself a medical examiner, within the language of the statute, would be to nullify its plain intent. Srch construction would leave it open to the insurance company to say that although the medical examiner was fully advised as to the facts, and reported the applicant as a fit subject for insurance, nevertheless, if the medical director was misled by the application and examiner's report into approving an application which would have been rejected had the facts been correctly stated to him by the applicant and the medical examiner, the application would have been refused. The distinction between the report of the medical examiner as to the condition of health of the applicant and as to whether he is a suitable risk, and the action of the medical director in recommending the issuance of a policy on such application and examiner's report, is pointed out in, *Peterson v. Des Moines L. Ass'n.,* 115 Iowa, 668, and we are constrained to adhere to the view expressed in that case.

In the certificate or contract of insurance it is provided that, in the event of the death of the assured "during membership, his beneficiary shall receive the sum of $2,000" and

2. CONSTUCTION of by-laws: assessments: liability of insurer: rights of beneficiary.
that "the amount due under this contract [is] to be provided for by assessments on the membership pro rata, according to age, as provided in the articles of incorporation, unless otherwise supplied," and the articles of incorporation and by-laws are made a part of the contract by reference. In the articles, two or three sources are indicated from which payment of death losses may be made, and it is nowhere indicated that an assessment must necessarily be made for each loss. But in one article it is stipulated

that the beneficiary "shall be entitled to a sum of money equal to what would be realized from an assessment upon all members, as shown by the books of the association at the time of the death of the member whose certificates have not since lapsed. But in no case shall the said sum exceed the amount so stated in the certificate of membership of the deceased member." In view of this provision of the articles it is argued that the lower court erred in directing a verdict for the full amount called for by the certificate in view of the fact that there was no evidence tending to show what sum would have been realized from an assessment and that plaintiff was entitled at most to a verdict for nominal damages. The record does not show what the provisions of the articles are as to the amount or frequency of the assessments, and to accept appellant's contention as a true interpretation of the contract would lead to the absurdity of saying that defendant had received considerable sums of money from the assured for a contract under which, so far as it appears, his beneficiary was entitled to no recovery whatever. We should hesitate to put any such construction on the language of the contract. But there is a perfectly satisfactory answer to appellant's argument. The articles do not provide that the beneficiary shall receive only the proceeds of an assessment, which could only be enforced by a supplemental action in equity to compel the defendant to make the assessment and pay over to the plaintiff the amount realized. The contract is not similar to that construed in *Newman v. Covenant Mut. Ben. Ass'n.*, 72 Iowa, 242. In the case before us an assessment is referred to only as a basis for determining the amount of recovery, and the provision is not that the defendant shall pay over the proceeds of an assessment, but that it shall pay to the beneficiary a sum equal to what would be realized from an assessment. The assessment is not made a condition pre-

cedent to the fixing of defendant's liability, but is referred to only as furnishing a measure by which the amount of liability may be determined. Giving the language its broadest interpretation, it would be open for a jury, in an action at law, to fix the amount due the beneficiary upon evidence as to the number of members shown by the books of the association at the time of the death, and what the assessment on that basis would amount to. As these facts were exclusively within the knowledge of defendant, and could only be established by evidence which it alone could produce, the burden was upon it to show such facts if it desired to escape liability on that account for the full amount of $2,000, which, by the face of its contract of insurance, it agreed to pay to the beneficiary on the death of the assured. *Hart v. National Masonic Acc. Ass'n*, 105 Iowa, 717. The court did not err, therefore, in directing the return of a verdict for the full amount of the insurance named in the contract.

Error is assigned in the overruling of a motion for a continuance, based on the inability of the defendant to secure the attendance of a witness who would testify that

3. DENIAL of continuance; absence of witness.

prior to the issuance of the certificate he, as a physician, was consulted by the assured, who stated to him that he had repeated attacks of dizziness, and in such attacks had become unconscious, and that he at times suffered from shortness of breath and pains in the region of the heart. As evidence of witnesses tending to show the same state of facts was properly excluded by the trial court, as above indicated, there was no error in overruling the motion.

It is contended that the action which was commenced November 9, 1901, was prematurely brought, for the reason that proof of the death of the assured was not made

4. PERMATURE action: proof of death: additional proof.

until September 1, 1901, and the by-laws provide that no suit shall be brought upon any claim against the association or any certificate

of membership before ninety days after receipt by said association of such satisfactory proof of death. Prior to the 1st of May, 1901, proofs of death were duly received by the defendant, to which the only objection made was that the cause of death was not satisfactorily stated. The articles and by-laws do not specifically require proof of the cause of death, but refer only to the fact of death. The officers of the association could not use their own judgment as to what was a satisfactory proof, and delay indefinitely the payment of the claim by asking further proofs as to specific matters, information as to which might occur to them to be desirable. Moreover, the officers of defendant did not definitely object to the proofs as not a sufficient compliance with the articles and by-laws, but merely advised the plaintiff that the claim would probably not be allowed by the board of directors without more definite information as to the cause of death. The board of directors could act as they thought wise about allowing the claim, but the officers could not, by asking for further information to lay before the board of directors, postpone the time within which action might be brought.

The judgment of the lower court is AFFIRMED.