JOSEPHINE M. BOULTING, Appellee, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

INSURANCE: Avoidance of Policy—Untrue Statements Which Inhere in Company's Certificate of Health. Untrue, but nonfraudulent, statements by a proposed insured, bearing solely on his present condition of health, inhere in a "certificate of health

or insurable fitness" subsequently issued by the insurer's medical examiner, even though the proposed insured made the statements (a) under an agreement that they should be treated as material, (b) for the purpose of obtaining insurance, and (c) with knowledge that the insurer believed them to be true and was relying thereon. (Sec. 1812, Code, 1897.)

PRINCIPLE APPLIED: The report of a medical examiner, acting for the company, showed (1) the questions put to the insured and the latter's answers thereto, and (2) the questions, put by the company to the medical examiner himself, and the latter's answers thereto. In the former, the insured unequivocally answered that he was not *then* using intoxicating liquors, and *had never used them to excess*. The facts were that, at all times during the nine years immediately preceding the making of said answers, the insured had not used such liquors, but at all times during the three years immediately preceding said nine years, he had used such liquors to great excess. That part of the medical examiner's report which dealt with his own answers concerning the insured's condition of health was held by the court to constitute a declaration that the insured was a fit subject for insurance, within the meaning of Sec. 1812, Code, 1897. In an action on the policy, the company did not plead fraud in the making of said statements.

*Held*, the untrue, but *non-fraudulent*, statement with reference to the insured's prior habits bore solely on his present condition of health; and inhered in the subsequently issued certificate of health by the company's medical examiner.

INSURANCE: Avoidance of Policy—Untrue Statements Bearing on
2    Health—Certificate of Health—Estoppel. An insurance company which issues a policy after its own medical examiner has, without fraud on the part of the insured, reported or certified to the company that the insured is a fit subject for insurance, may not thereafter plead that the insured was not, in fact, in the condition of health required by the policy at the time of its issuance. And the *answers* of a medical examiner to the questions put to him by his company may as effectually constitute a certificate or report of insurable fitness as the most formal and direct statement to that effect by the said examiner. (Sec. 1812, Code, 1897.)

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FEBRUARY 8, 1918.

ACTION on a policy of insurance resulted in judgment as prayed. The defendant appeals.—*Affirmed.*

*Milchrist, Scott & Pitkin* and *James H. McIntosh,* for appellant.

*C. H. Riniker* and *Henderson & Fribourg,* for appellee.

LADD, J.—I. John Boulting died September 29, 1914. His death was due to hemorrhagic pancreatitis. An insurance policy on the life of the decedent was issued November 28, 1913, and this suit is to recover the indemnity of $1,000 stipulated therein to be paid upon his death. This policy was issued in pursuance of decedent's application to the company, accompanied by the report of its local medical examiner, with answers made to him. Among these answers were the following, in response to the questions set out:

1. INSURANCE: avoidance of policy: untrue statements which inhere in company's certificate of health.

"What is your daily consumption of wine, spirits or malt liquor? None. What has it been in the past? None. Have you at any time used alcohol or drugs to excess? No."

The applicant declared that the answers were made to obtain the insurance, and that he understood and agreed "that they are each material to the risk; that the company, believing them to be true, will rely upon them."

In its answer, the defendant alleged the falsity of these answers; that the policy would not have been issued, but for its reliance thereon as true; and that it elected to rescind the contract expressed in the policy immediately upon discovering that said answers were untrue, by so notifying the beneficiary, and tendering return of the entire amount paid it on account of the issuance of the policy. The evidence that decedent had not indulged in the use of wine, spirits, or malt liquor during the nine years previous to his death was undisputed. Nothing contained in the record tended to show that the disease of which he died was traceable to

the use of intoxicating liquor. About nine years previous to his death, he had taken what is known as the Keeley Cure, a well-known treatment for the liquor habit; and the evidence tends to show that, during a period of three years, beginning in the spring of 1902, he was addicted to the use of intoxicating liquor, and frequently imbibed to excess.

The decedent must have been 24 or 25 years old when he took the cure and abandoned the habits mentioned, as his answers indicated that he was 33 years of age when he signed the application. It cannot be said, then, that he misrepresented his habits at the time he made answer to the medical examiner, and we are required only to ascertain the significance and bearing of the false statement with reference to his past habits.

After the introduction of all the evidence, each party moved for a directed verdict, whereupon the court excused the jury, and sustained plaintiff's motion by entering judgment as prayed, on the ground that the misrepresentation as to decedent's past habits in the use of intoxicating liquors inhered in the medical examiner's report. This, under the authorities heretofore cited, must be conceded, if the only bearing of the answers was as to his present condition of health. The appellant's contention is that the answers cannot be thus limited, but that they affect the hazard, independent of the applicant's physical condition, and therefore that defendant is not estopped, under Code Section 1812, from pleading this defense.

Possibly, existing habits of an applicant for insurance with reference to the use of intoxicating liquors might not only materially affect his physical condition, but also increase the hazard of a risk; for a person under the influence of liquor might not be as well able to care for himself as though not under such influence,—a point not necessary to determine. The habits of a person, in this respect, which have been abandoned, however, could not well have any

material bearing on the care he might give or precautions he might take for his own safety; and that he may have indulged, even excessively, could relate to or bear on his physical condition only. Such was the holding of the Court of Appeals of Kentucky, in *Mutual Life Ins. Co. v. Thompson,* 94 Ky. 253 (22 S. W. 87, 89), where the court observed that:

"It is of vital importance for an insurance company to know, before issuing a life policy, whether the applicant is then temperate in his habits; for obviously he would not be a fit subject for insurance, nor could a company prudently issue to him a life policy, if he was not then temperate in his habits of drinking intoxicating liquor, and consequently, if he had made a false statement in that particular, it would be no answer to say the habits were not such as to injure his health, because insurers have a right to protect themselves by guarding against the risk of pernicious habits. May, Ins. § 290. But it seems to us an inquiry in regard to previous habits of drinking intoxicating liquors is not material, unless they existed to such an extent as to affect the health or physical condition of the applicant, and thereby render him an unsatisfactory subject for life insurance."

There was no inquiry as to whether applicant had taken the Keeley or other cure; but even if there had been, it would seem that the only purpose which could have been subserved would have been to furnish facts on which the examiner's report on the physical condition of the applicant might be based. The same is true of an abandoned habit in the use of intoxicants. That this was appellant's view appears from the fact that the answers were in response to questions addressed by the medical examiner, rather than directly by the company, through its soliciting agent, to the applicant. The testimony of its physician tended to sustain our conclusion that whether decedent had formerly indulged in drinking wine, spirits, or malt liquor, or had used

alcóhol to excess, bore solely on his present physical condition and longevity, as affected thereby.

As said in *Stewart v. Equitable Mut. Life Assn.*, 110 Iowa 528:

"This policy contains no express requirements with reference to the health of the insured, nor are these ordinarily found in such instruments. Very evidently, the degree of health contemplated by the statute is that of being a 'fit subject of insurance.' But for being in that condition, no company would knowingly issue a policy. When the insured is in such a physical condition as to be 'a fit subject of insurance,' he is in a 'condition of health required by the policy.' The only possible purpose of the information sought was to enable the medical examiner to determine the true physical condition of the applicant."

We are of the opinion that the trial court rightly held that the inquiries inhered in the report of the medical examiner to the company.

II. But was there a report such as is 2. INSURANCE: avoidance of policy: untrue statements bearing on health: certificate of health: estoppel. contemplated in Section 1812 of the Code, which declares that:

"In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

It is to be noted that no particular form of report is

exacted.  If, in substance, by direct assertion or in response to interrogatories, the applicant is represented to be in insurable condition, this is sufficient.  Here, the medical examiner's report was, in large part, by question and answer; and, as indicating that his report was the equivalent of a certificate of health, or declaration that the insured was a fit subject for insurance, we quote some of the questions and answers:

"25. Do you find, after careful inquiry and physical examination, any evidence of past or present disease?  (If so, give full details.)    A.    Of brain or nervous system?  A.  No.  B.  Of the heart or lungs?  B.  No.  C.  Of the stomach or any of the abdominal organs?  C.  No.  D.  Of rheumatism or gout?  D.  No.  E.  Of the skin, middle ear, eyes or any part of the body?  E.  No.

"26. A.    Does chemical examination of the applicant's urine show albumen or sugar (even traces) or any abnormality?  A. No. B.  State specific gravity, and if it is below 1015 or above 1025, give your opinion below as to the cause.  B.  1020.  C.  Has applicant ever had any genitourinary ailment?  (Syphilis, stricture, etc.)  (If so, give full details.)  C.  No.  B.  Do you know or suspect that the applicant is now or ever has been intemperate?  B. No."

At the close is a special notice, in these words:

"The attention of the medical examiner is called to the fact that policies issued by this company are free from all restrictions as to residence, travel or occupation, and are incontestable after one year.  Every endeavor should be made, therefore, to make this report as complete and precise as possible; the object being to give the home office a pen picture of the applicant as he presents himself to you.  If, in addition, therefore, you know of any fact, or have any impression not expressed above, that in your judgment would probably influence the home office in its estimate of the risk, please note it below."

Manifestly this is such a report as contemplated in Section 1812 of the Code. These answers, with others by the examiner, plainly declared the applicant in such a condition of health as to be a fit subject for insurance. *Weimer v. Economic Life Assn.,* 108 Iowa 451; *Stewart v. Equitable Mut. Life Assn.,* 110 Iowa 528; *Peterson v. Des Moines Life Assn.,* 115 Iowa 669; *Wood v. Farmer's Life Assn.,* 121 Iowa 44; *Murray v. Brotherhood of American Yeoman,* 180 Iowa 626.

As remarked in *New York Life Ins. Co. v. Moats,* 207 Fed. 481:

"In other words, he had, as an expert representative of the company, and as required by his instructions, given in his report a pen picture of the applicant as he presented himself to the examiner, and this pen picture was favorable to the applicant as an insurable risk. It was plainly upon the examination and report of this .skilled expert of the company that the character of the risk was finally and mainly determined by the company."

The report being such as contemplated by the statute quoted, the company is estopped from inquiring into the condition of decedent's health at the time, or whether statements to the medical examiner were true or false, unless the report was obtained by fraud. Fraud on such examiner is not alleged. The judgment is—*Affirmed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.