JENNIE L. FABER, Appellee, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

No. 43304.

MAY 5, 1936.

Carr, Cox, Evans & Riley, for appellant.

E. W. McManus, for appellee.

RICHARDS, J.—On December 4, 1933, defendant issued a policy of insurance for $2,000 upon the life of Cleon J. Faber, who died on March 20, 1934. Plaintiff, the beneficiary, brought

this action to recover upon the policy. Defendant filed answer denying liability, alleging fraud on the part of the insured in the procurement of the policy, and that on account thereof defendant had rescinded the contract. The answer alleged .that the fraud consisted in the insured knowingly giving false answers to certain questions propounded to the insured in the application for the insurance, with intent that defendant's examining physician, and defendant, should rely thereon. The jury found for plaintiff. From a judgment thereon for the amount of the policy, defendant has appealed.

■ ■ ■ Several of appellant's assignments of error have for a premise the proposition that in this case the form of the medical examiner's report, which was made by defendant's medical examiner, was such that the provisions of section 8770, 1931 Code, have no application. Settling that question at the outset will make for brevity. The section referred to is as follows:

"8770. Physician's certificate—conclusiveness. In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

It is appellant's claim that in the medical examiner's report in this case there is found no "certificate of health," and nothing declaring "the appellant a fit subject for insurance," and that the medical examiner's certificate does not "so report to the company." Thereon appellant bases the contention that the medical examiner's report is not such report or certificate, as is contemplated by section 8770. Therefrom defendant concludes that it is not bound, in this case, by the estoppel found in section 8770.

In Boulting v. New York Life Ins. Co., 182 Iowa 797, 802, 166 N. W. 278, 280, concerning the medical examiner's report referred to in section 8770, it is said:

"It is to be noted that no particular form of report is

exacted. If, in substance, by direct assertion or in response to interrogatories, the applicant is represented to be in insurable condition, this is sufficient. Here, the medical examiner's report was, in large part, by question and answer; and, as indicating that his report was the equivalent of a certificate of health, or declaration that the insured was a fit subject for insurance, we quote some of the questions and answers.''

The opinion then quotes questions and answers appearing in the medical examiner's report in that case. Substantially the same questions and answers appear in the medical examiner's report in the case at bar. In the Boulting case there appeared in the form provided for the medical examiner's report a special notice to the examiner advising him that the object of the report is to give the home office a pen picture of the applicant as he presents himself to the examiner. A similar notice appears in the form used in the instant case. In this case before us the examiner is further notified that any information which for any reason he may prefer not to embody in the report should be sent direct to the company without delay. In the Boulting case the conclusion was:

''Manifestly this is such a report as contemplated in section 1812 (now section 8770) of the Code. These answers, with others by the examiner, plainly declared the applicant in such a condition of health as to be a fit subject for insurance. Weimer v. Economic Life Assn., 108 Iowa 451, 79 N. W. 123; Stewart v. Equitable Mut. Life Assn., 110 Iowa 528, 81 N. W. 782; Peterson v. Des Moines Life Assn., 115 Iowa 668, 669, 87 N. W. 397; Wood v. Farmers Life Assn., 121 Iowa 44, 95 N. W. 226; Murray v. Brotherhood of American Yeomen, 180 Iowa 626, 163 N. W. 421.''

In the medical examiner's report now before us, in addition to the questions and answers that are the equivalent of those set out in the opinion in the Boulting case, there appear also the following:

''Is applicant's general appearance healthy? Yes.
''Is applicant deformed, lame, maimed or ruptured? No.
''Pulse; its rate, seated? 72.
''Is it normal in character? Yes.
''Blood pressure? Sys. 128 Dias. 76.

"Age. 21 years.

"Does age given seem correct? Yes.

"Have you ever seen the applicant under the influence of intoxicants or drugs? No.

"Do you know or suspect that the applicant is now or ever has been intemperate? No.

"Do you know anything about the applicant's character or mode of life which unfavorably affects his insurability? No."

It is quite apparent that this case is ruled by the Boulting case, and the authorities therein cited. The medical examiner's report came within the evident intent and purpose of the legislature as expressed in above section 8770.

■■■ Coming now to the assignments of error, appellant claims that, even if in this case Code section 8770 has application, yet there was error in the overruling of the motion made by appellant for directed verdict, because, as urged in the motion, fraud on part of the insured, in the procuring of the medical examiner's certificate, was proved as a matter of law. We proceed to a necessary review of the evidence.

The insured was an unmarried man, 21 years old, living in the home of his parents, having employment as a jeweler in his father's store. He was solicited by one of defendant's agents to make application for the insurance involved. The application was made by the insured on forms furnished by defendant. The application form is divided into part 1 and part 2. Part 2 consisted of questions directed to any applicant for insurance, whoever he might be. As part 2 of the application now appears in this record, an answer appears to each question and at the end of the form is the signature of the insured, and the signature of the medical examiner as witness. Three of the questions and answers are in following words:

"7 B. Have you ever been under observation or treatment in any hospital, asylum or sanitarium? No."

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? No."

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? Date, Reason for consultation, Examination or treatment and results. R. H. Feger, Keokuk, Iowa. 1931.

Ins. examination for K. C. Insurance Exam. was passed in regular way.''

Upon the foregoing answers, appellant grounded its motion for directed verdict. It claimed the evidence established as a matter of law that these answers were made by the insured, were false, that the insured, knowing their falsity, intended the medical examiner should rely thereon, and that the subject-matter was material to the question of the acceptability of insured as a risk. It is conceded that the answers appearing in part 2 of the application were written into the form by the medical examiner, and that at the bottom of the paper constituting part 2 appear signatures as above stated. There is no other evidence connecting the insured with the answers contained in ''part 2,'' excepting the testimony of the medical examiner. So, consideration of his testimony becomes of importance, and we find therein much of inconsistency and contradiction. Although on examination in chief this witness related generally that the answers now appearing in ''part 2'' of the application were the answers given him by the insured, and were correctly written down, yet, in contradiction thereof, the jury could have found from further testimony of this witness the following facts: That the witness was a busy physician, with a large practice, frequently examining applicants for insurance for several different companies; that at the time he testified he was without any independent recollection of the answers made by the insured in connection with said part 2; that his testimony that the answers appearing in part 2 are as they were made by the insured is the conclusion of the witness from looking at part 2 and observing that the answers are as they now appear therein; that at the time of the trial this witness had no independent recollection of asking any of the questions in part 2, including numbers 7 B, 10, and 11 supra; that the witness wrote into part 2 at least one answer without asking the insured the question so appearing to have been answered, the question being whether albumin or sugar had ever been found in the urine of the insured; that the witness wrote ''no'' as the answer to this question without asking insured whether he had had any examination in that respect, the reason on the part of the witness in so doing being that he himself was to make a urinalysis as part of his medical examination;

that the witness did not write all the answers in the exact words of the answers as made by the insured; that what he wrote down was what he understood from the insured.

The jury also could have found the following from the testimony of this witness: That after the witness had written in the answers he did not read the paper over again to the insured; that the insured looked at it but did not read it, did not have time to do so, and signed the paper, "part 2," without reading.

The jury could have found from the testimony of this witness that before making his medical examiner's report, the witness had made a careful medical examination of the insured touching every question contained in the examiner's report; that from this examination he found nothing wrong; that this conclusion that there was nothing wrong was entirely the result of such examination, and in reaching such conclusion no reliance was placed on anything insured had said; that Exhibit 11, the medical examiner's report, would have been the same no matter what the insured said in answer to the questions. The jury could also have found that the insured was not seeking insurance from the defendant company and the making of the application was brought about by reason of solicitation by defendant's agent; that on the day previous to that on which the answers were written into part 2, defendant's agent and defendant's medical examiner had gone to the place of business of insured to procure the execution of the application by him, and the matter was postponed at the suggestion of the father of insured.

Such being the record, the question is whether appellant has proven as a matter of law all the elements constituting the affirmative defense of fraud. Appellee claims that certain facts, said by appellee to be essential elements of the defense of fraud, are not proven conclusively. To sustain this latter proposition, appellee raises the question whether it is conclusively shown that the answers appearing in part 2 of the application truly reflect the information given by insured to the medical examiner. Appellee seeks to sustain his proposition from two angles.

First, she points out that the only evidence that could establish that the answers appearing in part 2 correctly set out the information, and all the information, furnished to the medical examiner, was the testimony of the medical examiner him-

self; that this witness admitted having no independent recollection of the answers made by the insured; admitted that not all the answers are in the words of the answers made by the insured; admitted filling the answer to at least one question upon his own initiative and without the insured being asked whether he had had any previous examination of his urine; that this witness being without recollection of the answers actually made by the insured, there is no evidence that the only information furnished by the insured to the medical examiner was that now appearing in part 2. From these matters that the jury could have found, appellee says that all reasonable minds would not agree that it is conclusively shown that the answers now appearing in part 2 of the application correctly or fully embody all information and answers given to defendant's medical examiner in connection with the interrogatories.

Appellee's second proposition takes into consideration the fact that appellant's alleged conclusive proof is found in the testimony of one witness (and he presumably interested as the agent of the plaintiff), with respect to statements made in a conversation between the witness and the insured, now deceased. Appellee invokes the rule laid down by this court, when considering the question whether in all cases the testimony of the survivor of a conversation conclusively establishes the matters related by such survivor. We have held in numerous cases that such testimony is not necessarily conclusive. Holmes v. Connable, 111 Iowa 298, 82 N. W. 780. In Bohen v. North American Life Ins. Co., 188 Iowa 1349, 1354, 177 N. W. 706, 709, a defense of fraud was made as in the case at bar, the claim being that the insured knowingly and falsely stated the facts sought by an interrogatory in the application, when she answered that she had never had or suspected having a tumor. Insured did have a tumor and the question was whether she knew that fact. To establish that she so knew defendant insurance company offered the testimony of a Dr. Berkman, whom insured had consulted. Berkman testified that the insured told him that at a time previous to the answering the interrogatory she had noticed a growth, and had been advised by a physician a year previously of the fact that she had a tumor. From the opinion:

"As only the two were present at the conversation, and the

patient's lips were closed by death, his [Berkman's] testimony of her declarations is to be scrutinized cautiously, and it, as well as his credibility, tested as ordinarily is done under like circumstances. See Holmes v. Connable, 111 Iowa 298, 82 N. W. 780; Watson v. Richardson, 110 Iowa 673, 80 N. W. 407. The evidence was of alleged statements on the part of deceased. Such testimony is subject to imperfection and mistake, resulting from misunderstanding or imperfect memory as to what was, in fact, said, or misinterpretation of the words uttered, or their meaning as actually spoken.''

It was held that the record was such as to carry to the jury the issue whether insured knowingly deceived the examining physician as to the existence of the tumor.

In considering these two arguments of appellee, we have in this case the following situation: Appellant produced part 2 of the application and proceeded to undertake to prove that the answers appearing therein had been made by the insured. The proof offered was the testimony of the medical examiner. But in the course of this testimony there developed evidence from which the jury could have made the findings of fact already pointed out. The nature of these possible findings of fact was such that the evidence at that point in the trial of the case cannot be said to have been conclusive that the answers in part 2 are the correct and complete answers made by insured. Examining the record for other conclusive evidence on that question, we find none. Appellant did not rely on part 2 as being a written instrument sufficient in itself to prove conclusively that it was executed by insured, nor in the state of the record could it successfully so rely, because of evidence in the record making debatable the extent to which the instrument was the intentional act of the insured. We think it must also be said that even if the testimony of the medical examiner be considered in the favorable light accorded thereto by appellant, nevertheless such evidence was of such a character that it did not determine conclusively the fact under consideration. It was testimony relied on by appellant to establish oral communications made by one now deceased. There was no possibility of direct denial or explanation of the testimony of this witness because the only person who could make such denial or correction was not living. We fail to see wherein this situation differs

from those in which the rule has been laid down in the cases already cited that the testimony of such witness was not conclusive. Unable to find that appellant has conclusively established essential matters it undertook to prove with reference to the answers made by insured in response to the questions contained in part 2, it is unnecessary to determine whether reliance on part 2 by the medical examiner, and other questions raised by appellee, have been conclusively established by appellant. Following our own precedents, we think it must be held that the district court did not err in overruling appellant's motion for directed verdict.

■■■ Appellant assigns as error the excluding of evidence of witnesses bearing on the practices of defendant company in passing upon applications for insurance at its home office. As we understand this complaint, it is that the exclusion of this testimony precluded appellant from establishing that the medical department of the home office as well as the local medical examiner was fraudulently deceived. The court in substance instructed the jury that it was sufficient that defendant establish that the local medical examiner was deceived and misled. The burden on appellant being thus defined, and limited, we can find no prejudice to defendant in the fact the court excluded evidence of matters of the proving of which the defendant was relieved by such instruction.

The remaining assignments of error, in large measure disposed of by the finding with reference to Code section 8770 have been carefully examined, and no prejudicial error has been found therein.

The judgment of the district court is affirmed.—Affirmed.

MITCHELL, KINTZINGER, PARSONS, HAMILTON, ALBERT, and ANDERSON, JJ., concur.