NEVA RACHEL KAYSER, Appellee, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellant.

No. 46321.

JANUARY 11, 1944.

Grimm, Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, for appellant.

Donnelly, Lynch, Anderson & Lynch, of Cedar Rapids, for appellee.

MANTZ, J.— ██ Plaintiff commenced this action at law, alleging that on the 6th day of July 1938, the Occidental Life Insurance Company of California, a corporation, engaged in business in the state of Iowa, issuing policies of insurance upon the lives of persons, duly issued and caused to be delivered to Walter John Kayser, a policy of insurance upon his life, in which the plaintiff, the wife of said insured, was named as sole beneficiary; that under the terms of said policy the insurance company agreed to pay to the beneficiary $1,000 upon receipt of due proof of death of the insured; that she has duly performed all the conditions of the policy demanded of her. The defendant filed answer, admitting that the policy was issued as set out in the petition; and then stating that the policy described in plaintiff's petition and upon which action was brought was obtained from the defendant by false and fraudulent representations made by the assured, Walter John Kayser; that said representations were made in the written application for said policy. The defendant then sets out that part of the application containing statements which it claims were false, fraudulent, and untrue; and alleges that the said Walter John Kayser knew and had actual knowledge that said statements and representations were not true; that the defendant company believed the said statements to be true and relied thereon; that it would not have issued said policy had it known that said statements in said application were false and untrue; that the defendant company, immediately upon discovery of the falsity of said representations, tendered to plaintiff all premiums paid by the said Kayser, in the sum of $33.60, and all accrued costs of this action.

Plaintiff filed reply in which she denied each and every statement and allegation in defendant's answer, except such as she expressly admitted. She admitted that a true and correct copy of the policy was attached to the defendant's answer. She admitted that Walter John Kayser was examined by the defendant's

medical examiner. She denied that a true and correct copy of the application referred to in said answer was attached to said policy or endorsed thereon.

Evidence was offered by the plaintiff and by the defendant and at the close of all of the evidence the defendant made a motion for a directed verdict in favor of the defendant. This motion was overruled. The cause was submitted to the jury, which later returned a verdict in favor of the plaintiff in the amount of $1,161, and judgment was rendered on this verdict. The defendant later moved to set aside the verdict and to grant a new trial, which motion was overruled and the defendant appealed.

The first ground urged and argued by the appellant is that the trial court erred in overruling appellant's motion for a directed verdict. The record shows without conflict that Kayser, in an application which he signed on June 28, 1938, stated that he did not have nor had he ever had any illness or disease; that he had never consulted any physician other than Dr. Shellatol, of Independence, and that he had never been operated upon save for a broken right hip in 1923; that he had never been X-rayed; that he never had been a patient in any hospital or sanitarium, and that he was in good health. There is evidence in the record from which the jury could have found that these statements were false; that the assured had not broken his hip when a boy but had been operated on for osteomyelitis, which he contracted through sickness; that he had been afflicted with this malady for more than fourteen years; that he had been attended by numerous physicians at the University Hospital in Iowa City and by at least two in Independence; that he had been a patient in the University Hospital, appellant claims, on eighteen different occasions, and at the Peoples Hospital on at least four occasions; that he was, far from being in good health, the victim of a dread, incurable disease which he must have known would bring him to an early and untimely end. He was about twenty-eight years old at the time of his death.

This case has been tried three times in the district court. At the first trial the jury failed to agree; at the second trial

the court directed a verdict in favor of the plaintiff which, upon appeal was reversed by this court. Kayser v. Occidental Life Ins. Co., 231 Iowa 620, 1 N. W. 2d 715. A second appeal was taken on a practice question. Kayser v. Occidental Life Ins. Co., 231 Iowa 632, 1 N. W. 2d 720. In the opinion filed on the former appeal this court held that the cause should have been submitted to the jury. We are confronted with a like question here, only in this case the motion for a directed verdict was made by the defendant. We have gone over the evidence in this case, and also that available in the former appeal, and it seems to us that we would not be warranted in holding that the lower court was in error in refusing to direct a verdict in favor of the appellant. The applicant was examined by Dr. Artis, who was a representative of the appellant. Dr. Artis gave testimony in all of the cases. In answer to a question in the last case tried, as to whether he had any independent recollection of what was actually said or done at the time of the examination of Kayser in 1938, Dr. Artis answered, "No, sir." In the last trial Dr. Artis testified as to his reliance upon Kayser's answers to the questions propounded, while in the former trial this witness stated that he relied upon his own examination. There are other uncertainties, contradictions, and discrepancies in his testimony as given in the different trials. While the lapse of time, or other circumstances, might account for some of these, yet we believe there are in this last trial certain changes, inconsistencies, and uncertainties in his testimony which warrant the submission of that issue to the jury in order that it might pass upon his credibility and the weight to be given to his evidence.

We think the record in the present case shows facts and circumstances quite similar to those appearing in the case of Faber v. New York Life Ins. Co., 221 Iowa 740, 265 N. W. 305. In that case, as in this, there was in issue the question of whether or not the examiner for the insurance company had been deceived by the applicant to such an extent that he was led to issue what is termed a "certificate of insurability." That is one of the real issues in the present case, and, as we view the situation, it is a fact question and therefore proper for the jury to pass upon.

It is sufficient to say that in the present case the testimony

of Dr. Artis reveals that he had no independent recollection of some of the questions and answers given and in some instances he made answers to questions propounded which he thought or felt expressed the meaning of the applicant.

We can see no good reason for setting out the evidence in detail. We think that the testimony of Dr. Artis is such that it generated a jury question and that the court did not err in submitting the case to that body. See Olson v. New York Life Ins. Co., 229 Iowa 1073, 295 N. W. 833; Boulting v. New York Life Ins. Co., 182 Iowa 797, 166 N. W. 278; Boos v. Mutual Life Ins. Co., 205 Iowa 653, 216 N. W. 50, and cases there cited.

In the medical examiner's report, dated June 28, 1938, the following question was directed to Dr. Artis, the examiner: "Do you unreservedly recommend this applicant as a first class risk?" The examiner, Dr. Artis, answered this question by writing in the blank following, the word "yes." Based upon the application and the report of the examiner, the policy in this suit was issued and was in the possession of the assured at the time of his death.

█ The examiner for the insurance company having issued what was termed a "certificate of insurability," the defenses of appellant to an action upon the policy are limited by the provisions of section 8770 of the Code of Iowa, 1939, which reads as follows:

"Physician's certificate—conclusiveness. In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

In view of the fact that the examiner for the appellant issued such certificate of insurability, and the policy having been

delivered to assured, under the statute above set forth the appellant company is estopped to set up any defense to an action thereon except that the same was procured through the fraud or deceit of the assured. This defense is cast upon the appellant in this case.

The court in the instructions set forth the nature of the case, the issues and the law to be applied, and properly placed upon the appellant the burden of establishing its defense of fraud and deceit which it claims were practiced upon it by the assured, which had the result of the issuance of the policy in suit. Instruction No. 7 covers that point and reads as follows:

"Before the Defendant will be entitled to a verdict in this case it must prove by a preponderance of the evidence each of the following propositions:

"1. That the deceased, Walter John Kayser, made to the defendant's examining physician, Doctor G. Hubert Artis, the representations or statements charged in the answer of Defendant, or some of them, as set forth in the statement of the issues herein.

"2. That such statements made to said examining physician were false and untrue at the time so made.

"3. That at the time such statements were made to the examining physician the said Walter John Kayser knew the same to be false.

"4. That such statements and representations were made by the said Walter John Kayser with intent to deceive the said examining physician.

"5. That the examining physician relied on said statements, or some of them, and was induced thereby to issue the certificate of health and report that said Walter John Kayser was a first class risk.

"If the Defendant has failed to prove each and all of the foregoing propositions by a preponderance of the evidence, then your verdict in this case will be for the Plaintiff; but if the Defendant has proven each and all of the foregoing propositions, then your verdict will be for the Defendant."

This instruction, along with others given, is criticized by the appellant, claiming that the giving of same or parts of them

constitutes error. Of the seventeen instructions given ten are criticized by appellant as being erroneous. We will not discuss them singly but will call attention to certain of them. We find that the criticisms in many instances are quite general. Complaint is made by the appellant that the instructions as a whole place undue and unwarranted emphasis upon the matters which appellant was required to show in order to establish its defense; that in some respects they are unbalanced; that there were inconsistencies and contradictions therein, together with unnecessary repetition, and appellant argues that such resulted in confusion and uncertainty and in the misleading of the jury.

We have gone over the instructions given and find ourselves unable to agree with the appellant with respect to the complaints which it has made. We think that as a whole the instructions fairly, clearly, and correctly present the issues involved and the legal principles to be applied in determining the ultimate question. We hardly think it necessary to cite authorities for the long-standing and well-established rule of this and other jurisdictions that instructions to a jury are to be construed as a whole and not by piecemeal. We should not lose sight of situations under which instructions are usually prepared. Neither should we forget that instructions are almost universally addressed to laymen, those unschooled in the niceties of language and, in many instances, in legal phraseology. The main purpose of the instructions should be to inform the jury what the case was about, the issues being tried and by them to be determined, setting forth the principles of law to be by them applied in so doing. We believe that the instructions as a whole meet this test.

Appellant alleges that the court erred in permitting appellee, over objection of appellant, to open and close the argument to the jury. Here appellee brought suit upon a policy of insurance. Appellant answered by setting up an affirmative defense; also a general denial. This court has held in a number of cases that the trial court is clothed with considerable discretion in such cases. It has recently held that to warrant a reversal on account of the action of the lower court in denying a party the right to open and close the argument there must be a showing of prejudice. It further held that the granting or denying of a

right to open and close the argument is a matter of procedure on which this court is always reluctant to base a reversal. In re Estate of Cocklin, 232 Iowa 266, 5 N. W. 2d 577. See, also, O'Connor v. Kleiman, 143 Iowa 435, 121 N. W. 1088; Shaffer v. Des Moines Coal & Hay Co., 122 Iowa 233, 98 N. W. 111. Under the authorities, we hold that in this case there was no abuse of discretion shown by the trial court in denying the appellant the right to open and close the argument.

■ The appellant criticizes the instructions given by the court and the manner in which the issues were therein set forth. An examination of the instructions upon this point reveals that the court set forth in substance the claims which appellant was making as to its defenses to the suit. In its answer appellant pleaded that the policy was obtained by reason of fraud and deceit on the part of applicant in said answers attached to the application of the assured and the record of the medical examiner. In the statement of the issues there were included some questions in the health record over which there was no dispute. In fact, no evidence was introduced concerning certain items. The defense of the appellant necessarily had to rest upon the false answers given. The questions to which the alleged false answers were given were set forth in the statement of the issues. No others are involved. We are unable to understand how the inclusion in the issues of a few of the questions over which there was no dispute could result in prejudice to the insurer.

■ Instruction No. 7 is criticized in that the court told the jury that the appellant, in order to establish its defense, would have to prove the false representations "or some of them," and appellant argues that the court, under the law, should have used the expression "one or more" when referring to the false representations. We are unable to see how the statement "some of them" differs in substance or in essentials from the meaning of "one or more." This same complaint is made of other instructions. In discussing this question, the Nebraska Supreme Court, in the case of Holtz v. Plumer, 133 Neb. 878, 879, 277 N. W. 589, said:

"Webster's New International Dictionary Unabridged

(2d ed.) gives the word 'any' as a synonym for 'some.' From the subject-matter and context that appears to be the sense in which the court used it. It evidently was intended by the court to mean the same as 'one or more' of the acts of negligence charged in the petition and set out in the instructions.''

It seems to us that this was what the court had in mind in giving the instructions, when we consider the subject matter and context appearing therein. We do not think that the instruction bears out the contention of appellant and we do not feel that such instruction misled the jury. It is quite evident from the instruction criticized, along with other instructions, that the court directed the jury that the defense of appellant would be established if one or more of the alleged false representations were shown.

Instruction No. 4 is criticized under the claim that the court placed undue emphasis on the burden of proof imposed upon appellant in said instruction, and the claim that there was therein repetition of what had been set out in Instruction No. 3. The appellant makes the specific complaint that the court erred in setting out the Iowa statute applying when a certificate of insurability had been issued by the medical examiner. Certainly it was the duty of the court to instruct as to the law to be applied to a given situation and we fail to see wherein the court erred in so doing. We think that the omission of such instruction would have been error. The defense of the appellant to a suit on the policy was limited and narrowed by reason of the issuance of the certificate and it was then proper to set forth the statute having application. Regarding the claim which appellant made in regard to this and other instructions that the same contained repetitions and therefore were unfair to appellant, there are very few instructions which do not have in them some repetitions. At times such are unavoidable; sometimes, necessary. Of course, if this situation went so far as to place undue emphasis upon certain matters instructed upon, we would then be confronted with a different condition. In the present case we do not think that the repetitions complained of were in any manner prejudicial to appellant.

In Instruction No. 5 the jury was told that under the

issues the appellant would not have to show that the company itself was deceived but need only show that Dr. Artis was deceived by the alleged false and fraudulent statements of the assured. The complaint also seems to be that the court in said instruction did not set forth or itemize the claimed false statements. We find no merit to this claim. In its instructions such are set forth. The court told the jury that it was necessary for the appellant to establish them, otherwise it would fail in its defense. It seems to us that the appellant's claim that in said instruction it was required that the appellant prove the falsity of all of the answers as claimed by defendant is somewhat farfetched when we consider that this instruction does not stand alone but must be taken along with other instructions.

As to the claim of the appellant that Instruction No. 6 is erroneous, we can see little merit to such claim. Said instruction, in effect, stated that fraud is never presumed and if the facts upon which it is charged are consistent with honesty and purity of intention, then the charge of fraud will fail, and that the facts must lead naturally and clearly to the conclusion sought to be established and be inconsistent with any other reasonable or probable theory. It is an instruction which has been given repeatedly and we think it clearly and definitely embodies the law of Iowa upon the subject. Certainly an instruction of this kind did not work any hardship upon the appellant.

Appellant claims that the giving of Instructions Nos. 10 and 11 was erroneous in that therein there were comments upon the evidence required as a prerequisite to the medical examiner to rely upon the statements of the applicant; and that as such they were unfair, unbalanced, and magnified the burden of the appellant.

By commenting upon the evidence appellant doubtless refers to what the court said in Instruction No. 10 relative to the physical examination which Dr. Artis made of Kayser, and especially the hip and scars thereon, which scars indicated prior operations. The instruction, in effect, told the jury that Dr. Artis at that time had an opportunity to make a full and complete examination of the applicant and to notice what was readily apparent.

The evidence shows that the examiner noticed the limp, the defective hip, and the scars, and that they were capable of being seen, and it seems to us that the court very properly told the jury that they would have the right to take into consideration such opportunity of Dr. Artis to see what was plainly visible, or anything that could be readily ascertained by the examiner. We are unable to understand in what respect this instruction, or either of them, is unbalanced or magnified the burden imposed upon appellant. Certainly the jury would have the right to take into consideration the opportunity of Dr. Artis to make the examination which he made at the time in question. We are of the opinion that there is no merit to the claim that there was error in either of said instructions.

Regarding other instructions of which complaint has been made, we have examined the same and the authorities cited thereunder. Under the record as made in the case we hold that the complaints made regarding them are without merit.

The appellant makes a further complaint of the action of the trial court in not admitting the evidence of a Mr. Curtis, an underwriter for the insurance company, who testified to representations of assured in regard to part 2 of his application (medical examiner's report), and that he believed said representations and if he had known the real truth as to applicant's condition and history, he would not have approved the application nor would the company have issued the policy. The evidence offered was material and was excluded by the trial court, the grounds of the objection being that same was wholly incompetent, irrelevant, and immaterial and not within the issues. It seems to us that in this respect appellant is claiming that the court erred in excluding the evidence on a point which appellant was not required to prove. The court did not require further than that the examiner, Dr. Artis, was deceived. Nowhere did the trial court require appellant to prove that the company was deceived. We call attention to paragraph 5 of Instruction No. 7, which reads as follows:

"That the examining physician relied on said statements, or some of them, and was induced thereby to issue the certificate

of health and report that said Walter John Kayser was a first class risk.''

As bearing upon this contention upon the part of appellant, see Faber v. New York Life Ins. Co., supra, 221 Iowa 740, 265 N. W. 305.

■    Appellant claims that the court erred in refusing to permit Dr. Moon and Harold Gipe, witnesses for appellant, to testify as to certain claimed statements made to them by Kayser over a year subsequent to the examination by Dr. Artis. It is claimed that assured then told such witnesses about his physical condition, the disease from which he was suffering, and the various treatments which he had taken in an effort to obtain relief. The objection sustained to this offer of testimony was that such was hearsay, incompetent, irrelevant, and not binding upon the appellee, who was a beneficiary under the policy. Following the action of the lower court sustaining the objection, the appellant made proffer to show by such witnesses that at the time such witnesses conferred with assured the latter told them of the disease from which he was then suffering; that he had suffered from it for many years; that during this time he had been confined in hospitals and had undergone numerous operations in an effort to obtain relief. The proffer was rejected upon objection.

Dr. Moon, of Cedar Rapids, was called upon to treat assured in August 1939, about a month prior to his death. In his professional capacity he made four visits to the home of the assured. The court permitted him to testify as to the results of his examination, the condition of the patient, and treatment which he administered. Dr. Moon testified that he found him suffering from the condition of recurring osteomyelitis; that he was then bedridden and was suffering pain, and that the disease affected his right hip.

Harold Gipe was an investigator for the relief agency of Linn County, Iowa, and called in that capacity. According to the proffer of his testimony as to statements made to him by the assured touching his condition, his evidence would have been substantially the same as that proffered to be made by Dr. Moon except as to diagnosis and treatment.

Regarding the testimony of Dr. Moon, it will be observed that the objection did not involve the question of privilege of the witness to testify. The objection sustained was that the testimony was hearsay, that same was incompetent, and not binding upon the appellee, the beneficiary under the life insurance policy. It is a general rule that the beneficiary under a life insurance policy is not bound by admissions of the assured unless the same are a part of the res gestae. These alleged admissions having been made more than a year subsequent to the issuance of the policy certainly cannot be a part of the res gestae. In this case the widow, Mrs. Kayser, beneficiary under the policy, was claiming in her own right as beneficiary, not as a representative of the assured. See Sutcliffe v. Iowa State Traveling Men's Assn., 119 Iowa 220, 93 N. W. 90, 97 Am. St. Rep. 298; Fitch v. American Popular L. Ins. Co., 59 N. Y. 557, 559, 17 Am. Rep. 372; Vernon v. Iowa State Traveling Men's Assn., 158 Iowa 597, 138 N. W. 696; Pride v. Interstate Business Men's Acc. Assn., 207 Iowa 167, 176, 216 N. W. 62, 66, 62 A. L. R. 31, 38.

In the case of Pride v. Interstate, supra, the defense was that the assured had committed suicide in violation of the terms of the policy, and defendant produced a witness and offered to prove by him certain admissions made to him which tended to support the claim of suicide. Objection to the offer was sustained as being incompetent and hearsay and no part of the res gestae. In that case the beneficiary was the wife of the assured and plaintiff in the case. The court said:

"It is the settled law of this state that the beneficiary of an insurance policy takes under her own right, and not as a representative of, or through, the assured, and that the declarations of the insured are not binding upon her."

In the Pride case, supra, the court, in support of its holding, cited cases from the state of Wisconsin, to wit, Maine v. Maryland Cas. Co., 172 Wis. 350, 178 N. W. 749, 15 A. L. R. 1536; Rawson v. Milwaukee Mut. L. Ins. Co., 115 Wis. 641, 92 N. W. 378. In the last-cited case the beneficiary, widow of assured, sued on a fraternal life policy issued by the Fraternal Alliance Life Insurance Association and later assumed by the defendant. There the defense was false representations in the

application for insurance. The defendant sought to show the statements made by the assured as to his physical condition prior to the issuance of the policy in suit. In that case the court recognized the general rule that in ordinary life insurance the admissions of the assured, when not a part of the res gestae, are inadmissible against the beneficiary. This general rule seems to be based largely upon the fact that a beneficiary has a vested interest in the policy during the life of the insured. The Wisconsin case held that a like rule would apply were suit brought by a beneficiary of a fraternal policy. In the case of Maine v. Maryland Cas. Co., supra, 172 Wis. 350, 357, 178 N. W. 749, 751, 15 A. L. R. 1536, 1541, the court used the following language:

"Recitals of past events made by an interested person are no more admissible because made to physicians or surgeons, even when necessarily so made for the purpose of proper treatment by them, than if made to other persons."

We hold that the court did not err in sustaining objections to the testimony of Dr. Moon and Harold Gipe as to what the assured told them in August 1939, about his past condition and history.

In further consideration of the claim of appellant as to the admissibility of the testimony of Dr. Moon and Harold Gipe, we find substantially the same evidence in the testimony of other witnesses introduced by appellant. Appellant offered and had received in evidence certain X-ray films taken of assured at the state hospital at Iowa City at various dates, some of them as late as August 1939, the first one being taken on September 21, 1933. Dr. Steindler, who was head of the hospital, testified of the visits there of the assured and his personal contact with him and of obtaining the history of his case; also as to the disease and operations performed. Dr. Hersey, of Independence, told of the various treatments of assured, running all the way from 1933 to late in 1936; of his condition and treatment; that he had gotten the history of the case from the assured. While none of these witnesses testified directly to statements or admissions made by the assured, yet the history which they secured from him was

undoubtedly for the most part based upon what he told them when he was being treated.

The appellant argued at some length concerning the waiver of statutory privileged communications existing between physician and appellee. There is no contention concerning that matter. There was a waiver of such privilege. However, we do not find that that issue has been raised as to any of the testimony offered in the case. Various medical men who had attended the assured gave testimony concerning the assured and their dealings with him and what they found and the treatments rendered, and we do not find that there was any question raised as to the privilege of these witnesses to testify. It was not urged against the testimony of Dr. Moon. It was simply urged that he was incompetent to testify as against the beneficiary who brought suit therein.

It is our conclusion that there was no reversible error in the case and that the same was properly submitted to the jury.— Affirmed.

All JUSTICES concur.